UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK A. BOUSSUM,

      Plaintiff,               CIVIL ACTION NO. 16-cv-12930

      v.                     DISTRICT JUDGE JOHN CORBETT O'MEARA

SHERMAN CAMPBELL *et al*.,      MAGISTRATE JUDGE MONA K. MAJZOUB

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Mark A. Boussum, proceeding *pro se*, filed this prisoner civil rights action on August 8, 2016, pursuant to 42 U.S.C. §§ 1983 and 1988, alleging that Defendants Sherman Campbell, Lee McRoberts, Douglas Smith, Trudy Bower, Suzanne Wayda-Slomski, Matthew Harpst, Christina Bates, Gary King, Louis Condon, and Russell Doyle violated his rights as secured by the First and Fourteenth Amendments to the United States Constitution.[1] (Docket no. 1.) This matter comes before the Court on Plaintiff's and Defendants' Motions for Summary Judgment. (Docket nos. 42, 43.) Plaintiff filed an untimely response to Defendants' Motion for Summary Judgment.[2,3] (Docket nos. 45, 46.) This action has been referred to the undersigned

---

[1] Plaintiff named "S. Campbell," "McRoberts," "S. Smith," "T. Bowers," "S. Slonski," "M. Harpst," "C. Bates," "King," "Conclon," and "Doyle" as defendants in the Complaint; however, Sherman Campbell, Lee McRoberts, Douglas Smith, Trudy Bower, Suzanne Wayda-Slomski, Matthew Harpst, Christina Bates, Gary King, Louis Condon, and Russell Doyle have appeared as defendants in this matter. (*See* docket nos. 1, 23, 27.)

[2] Plaintiff filed his Response more than two months after Defendants filed their Motion for Summary Judgment, without leave of court, and it is therefore untimely under United States District Court for the Eastern District of Michigan Local Rule 7.1(e)(1)(B), which provides that a response to a dispositive motion must be filed within 21 days after service of the motion. The court has considered Plaintiff's Response nonetheless.

[3] Also pending before the Court are Plaintiff's Motion to Compel Discovery and Plaintiff's Motion to Strike Defendants' Affirmative Defenses in Part. (Docket nos. 36, 37.) These motions will be addressed in a separate Opinion and Order.

for all pretrial purposes.  (Docket no. 15.)  The undersigned has reviewed the pleadings, dispenses with oral argument on the Motions pursuant to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.      RECOMMENDATION

For the reasons that follow, it is recommended that (1) Plaintiff's Motion for Summary Judgment (docket no. 42) be **DENIED**; (2) Defendants' Motion for Summary Judgment (docket no. 43) be **GRANTED** with regard to Defendants Campbell, McRoberts, Bower, Wayda-Slomski, Bates, Condon, and Doyle as well as Plaintiff's retaliation claim against Defendant Smith, and **DENIED** with regard to Defendants Harpst and King; (3) Plaintiff's claims against Defendant King and Plaintiff's due process claim against Defendant Smith be **DISMISSED** pursuant 28 U.S.C. § 1915(e)(2)(B); and (4) this matter **PROCEED** on Plaintiff's claims against Defendant Harpst only.

## II.     REPORT

### A.      Background

Plaintiff is currently incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan; however, the events giving rise to the Complaint allegedly occurred while he was incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan.  (Docket no. 1 ¶ 6.)  Plaintiff worked as a law library clerk at the Gus Harrison Correctional facility from February 11, 2014 to May 29, 2014.  (Docket no. 43 at 26.)  The following factual summary is gleaned from Plaintiff's Complaint.  (Docket no. 1.)

On the morning of May 22, 2014, Plaintiff reported to work and spoke with Library Technician Suzanne Wayda-Slomski in the library's office regarding ongoing harassment from Librarian Trudy Bower.  (Docket no. 1 ¶ 21.)  According to Plaintiff, Wayda-Slomski told him

that Bower had it out for him because she thought that Plaintiff made a complaint against her and helped another inmate file a grievance against her.  (*Id*.)  Bower then walked into the office and gave Plaintiff a look to get out; Plaintiff left the office.  (*Id*.)  A little later that morning, Wayda-Slomski came out of the office and told Plaintiff that she and Bower did not want Plaintiff helping any inmates with regard to how the law books worked or how to find policies or law, and she advised him that he was not to talk to the inmates at all.  (*Id*. ¶ 22.)

Subsequently, at about 9:45 a.m. that morning, Plaintiff was engaged in a conversation with fellow inmate and law library clerk Bennett regarding how they formatted and typed their briefs, when Bower slipped up behind them, put her finger in Plaintiff's face, and told him that he needed to shut up and stop giving Bennett legal advice.  (Docket no. 1 ¶¶ 23-24.)  Bennett spoke up and told Bower that Plaintiff was not giving him legal advice.  (*Id*. ¶ 25.)  Plaintiff also tried to explain to Bower that he was not giving legal advice, and he told her that he had a right to talk to anyone, that he was tired of her harassment, and that he was going to file a grievance against her for retaliation if she didn't stop it.  (*Id*. ¶ 26.)  Bower immediately marched out of the law library and came back a few minutes later with three correctional officers (including Defendant Russell Doyle) and Assistant Deputy Warden (ADW) Lee McRoberts.  (*Id*. ¶ 27.)  Plaintiff asserts that the officers told him to grab his things and follow them, and as they were walking down the hallway, McRoberts yelled at Plaintiff that he would not tolerate Plaintiff being disrespectful to one of his staff members, *i.e.*, Bower.  (*Id*. ¶ 28.)

McRoberts also told Doyle to take Plaintiff's paperwork and read it over to see if Plaintiff had anything that he shouldn't have.  (Docket no. 1 ¶ 28.)  Doyle began reading Plaintiff's legal papers and found that Plaintiff had in his possession the grievance of another inmate by the name of Emerson.  (*Id*. ¶ 29.)  McRoberts then instructed Doyle to write a Notice of Intent to

confiscate the grievance from Plaintiff.   (*Id*. ¶ 30.)   Plaintiff and McRoberts subsequently engaged in an argument regarding whether Plaintiff had the right to possess the grievance or to help inmate Emerson with the grievance.   (*Id*. ¶ 31.)   Plaintiff allegedly accused McRoberts of retaliation for the incident with Bower, and McRoberts allegedly told Plaintiff that he was going to lay Plaintiff in from work and re-class Plaintiff out of the law library clerk job.   (*Id*. ¶¶ 32-33.) Later that day, Defendant King called Plaintiff to his office to hold a hearing on the Notice of Intent to confiscate inmate Emerson's grievance.   (*Id*. ¶ 34.)   King asked Plaintiff if there was any reason why he should not destroy the grievance, and Plaintiff responded that King shouldn't destroy it because it belonged to inmate Emerson and it related to Emerson's ongoing issue with medical health services.   (*Id*.)   King told Plaintiff that if a prisoner has another inmate's grievance in his possession, it becomes contraband, and contraband is destroyed.   (*Id*.)

On May 29, 2014, Bower wrote a misconduct report against Plaintiff for insolence, and she also completed a Prisoner Program and Work Assignment Evaluation Report, in which she gave Plaintiff low marks and requested that Plaintiff be immediately terminated from his law library clerk job assignment.   (Docket no. 1 ¶ 38.)   Plaintiff was called to the Control Center for a hearing on the misconduct ticket on June 6, 2014.   (*Id*. ¶ 44.)   While waiting for the hearing officer, Plaintiff observed Captain Douglas Smith, McRoberts, and ADW Sherman Campbell come out of an office together.   (*Id*.)   Smith then invited Plaintiff into the office and told Plaintiff that he was going to find him guilty of the misconduct.   (*Id*. ¶¶ 44-45.)   Plaintiff objected and told Smith that he had evidence showing that he did not call Bower a bitch and that he could not understand how Smith could find him guilty when Smith had not even seen the evidence.   (*Id*. ¶ 46.)   According to Plaintiff, Smith responded by saying that he was finding Plaintiff guilty and "remember that everything we do has a reason and purpose young man."   (*Id*.)   He then

4

dismissed Plaintiff.  (*Id*.)  As Plaintiff got up to leave, he suggested to Smith that the purpose of Smith's decision was to harass and retaliate against Plaintiff for the things that Plaintiff had written against the staff and the facility.  (*Id*. ¶ 47.)  Smith allegedly responded that "it's all about the power of the pen" and then sanctioned Plaintiff to five (5) days loss of privileges.  (*Id*.)  Plaintiff subsequently appealed Smith's decision, and ADW Campbell granted the appeal and ordered a rehearing on the matter.  (*Id*. ¶¶ 48-51.)  The rehearing took place on June 30, 2014, at which Smith reversed his previous guilty decision and dismissed the charge of insolence against Plaintiff.  (*Id*. ¶ 52.)  Plaintiff, however, had already served the five days loss of privileges.  (*Id*. ¶ 53.)

On or about July 3, 2014, Plaintiff sent a letter to Classification Director Matthew Harpst requesting that the Prisoner Program and Work Assignment Evaluation Report completed by Bower be removed from his record, that he be paid back pay, and that he be reinstated in his law library clerk assignment.  (Docket no. 1 ¶ 55; docket no. 43 at 18.)  Having not received a response from Harpst, Plaintiff filed a grievance against him on July 14, 2014, for failing to respond.  (Docket no. 1 ¶ 55.)  Harpst responded to Plaintiff's letter on July 17, 2014, and granted Plaintiff $20.96 in back pay, but he declined to remove the Report from Plaintiff's record, and he declined to reinstate Plaintiff to his law library clerk assignment because he determined that it was a threat to the safety or security of the facility.  (*Id*. ¶¶ 56-57.)  Defendant Bates subsequently denied Plaintiff's Step I grievance against Harpst, and Defendant Campbell denied Plaintiff's Step II grievance appeal.  (*Id*. ¶¶ 58-61.)

Lastly, Plaintiff alleges that Assistant Resident Unit Supervisor Condon retaliated and committed job classification violations against Plaintiff for filing grievances by refusing to try to get Plaintiff classified back into his law library clerk job, by assigning Plaintiff to kitchen and

janitorial jobs, and by transferring Plaintiff to another correctional facility on March 24, 2015, at which Plaintiff suffered assault, property theft, and property destruction. (Docket no. 1 ¶¶ 64-83.) Plaintiff claims that Defendants' actions outlined above violated his First and Fourteenth Amendment rights. (*Id*. ¶¶ 84-120.) As relief, Plaintiff seeks a declaratory judgment, an injunction, and compensatory and punitive damages. (*Id*. at 31-32.)

### B.    Governing Law

Plaintiff and Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket nos. 42, 43.) Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly

supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).   Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

    **C.**    **Analysis**

        *1.*    *Exhaustion of Administrative Remedies*

Defendants argue that summary judgment in their favor is appropriate because Plaintiff has failed to exhaust his administrative remedies under the Prison Litigation Reform Act with regard to most of his claims.   (Docket no. 43 at 11-17.)   The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a section 1983 action.   Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."   *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 regarding prisoner grievances[4] requires a prisoner to file a Step I grievance within five days of attempting to resolve the grievable issue with prison staff.   MDOC P.D. 03.02.130(V).   If the prisoner is

---

[4] Defendants attached a copy of MDOC Policy Directive 03.02.130 to their Motion.  (Docket no. 43-2.)

dissatisfied with the Step I response, he may file an appeal, referred to as a Step II grievance, "within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due."  MDOC P.D. 03.02.130(BB).  A similar procedure applies to the Step III grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . , to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due."  MDOC P.D. 03.02.130(FF).  A prisoner's administrative remedies are exhausted once his complaints have been grieved through all three steps of the grievance process in compliance with the policy.  MDOC P.D. 03.02.130(B).

To support their Motion on the issue of exhaustion, Defendants have submitted Plaintiff's Step III Grievance Report, which identifies all grievances that Plaintiff pursued through Step III of the grievance process between May 2009 and October 5, 2016.   (Docket no. 43-3.) Defendants point out that Plaintiff filed two Step III appeals for grievances that he initiated during his incarceration at the Gus Harrison Correctional Facility, and they have attached the underlying documentation for those grievances to their Motion.  (Docket no. 43 at 15-16; docket no. 43-3.)  One of the grievances relates to Plaintiff's complaint that he was prohibited from wearing his yarmulke to an off-site eye doctor appointment, and it is irrelevant to Plaintiff's claims in this case.  (Docket no. 43-3 at 8-20.)  The other grievance, ARF-14-07-1939-02c, is the July 14, 2014 grievance in which Plaintiff grieved Defendant Harpst for failing to respond to his letter requesting that the Prisoner Program and Work Assignment Evaluation Report be removed from his record and that he be reassigned to his job as a law library clerk.  (Docket no. 43-3 at 25.)

8

Defendants assert that Plaintiff failed to exhaust his administrative remedies with regard to all of his claims against Defendants except for those against Defendant Harpst, because Plaintiff does not name any defendant other than Defendant Harpst at Step I of Grievance ARF-14-07-1939-02c.  (Docket no. 43 at 16-17.)  Plaintiff counters that he filed Grievance ARF-14-07-1939-02c on June 1, 2014, in which he named Defendants Bower, Doyle, McRoberts, and King at Step I.[5]  (Docket no. 46 at 6.)  Plaintiff asserts that he also named Defendants Campbell, Harpst, Bates, McRoberts, Condon, and Smith in his Step II and III appeals of Grievance ARF-14-07-1939-02c.  (*Id*. at 6-7.)  Plaintiff argues that "'exhaustion is not per se inadequate simply because an individual later sued was not named in the grievance'" and that Defendants have not asserted that they did not receive fair notice of Plaintiff's alleged constitutional claims.  (*Id*. at 10 (quoting *Jones*, 549 U.S. at 219).)   Additionally, Plaintiff argues that he was not required to name Defendants Smith or King in a grievance because they are hearing officers whose actions are non-grievable under MDOC Policy Directive 03.02.130(F).  (*Id*. at 11.)

Plaintiff also makes two other arguments that the Court will quickly address before proceeding to address the parties' aforementioned arguments.  Plaintiff argues that all of his claims in this matter, occurring both before and after the filing of Grievance ARF-14-07-1939-02c, should be considered as having been exhausted by the grievance because they are all part of a scheme of ongoing retaliation.  (*Id*. at 10-11 (citing *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008) (holding that that pre- and post-grievance claims of denial of medical treatment were properly exhausted under the PLRA.)).)  *Ellis* is distinguishable from this case, however, because it involved a grievance regarding an ongoing denial of care for a chronic

---

[5] According to the grievance records submitted by Defendants, Grievance ARF-14-07-1939-02c was filed by Plaintiff in July of 2014 against Defendant Harpst.  Plaintiff has attached to his Complaint a grievance against Defendant Bowers reflecting a date of June 1, 2014, but there is no grievance identifier recorded in the top right-hand corner of the grievance form and there is no date recorded on the line titled "Date Received at Step I."  (*See* docket no. 1 at 65.)  In any event, there is no record that Plaintiff pursued this June 1, 2014 grievance against Defendant Bowers through Step III of the grievance process.  (*See* docket no. 43-3 at 2-7.)

medical condition.  And while Plaintiff alleges a scheme of ongoing retaliation in this matter, the events comprising the alleged scheme are acute, discrete events that should have prompted Plaintiff to invoke the grievance process immediately.  *See id.* at 784.  Moreover, in *Ellis*, the plaintiff grieved an ongoing denial of medical treatment, *id.* at 780; conversely, Plaintiff did not grieve an ongoing scheme of retaliation at Step I of Grievance ARF-14-07-1939-02c, docket no. 43-3 at 25.  Accordingly, *Ellis* is not instructive here, and Plaintiff's argument fails in this regard.  Lastly, but illogically, Plaintiff asserts that even though he named Defendant Harpst in his Step II appeal of the grievance, he could not grieve Defendant Harpst because Defendant Harpst was unknown to him at first.  (*Id.* at 12.)  As discussed above, however, Plaintiff named and grieved Defendant Harpst at Step I of Grievance ARF-14-07-1939-02c.  This argument lacks merit.

Plaintiff cites the Supreme Court's decision in *Jones v. Bock*, *supra*, to support his argument that proper exhaustion of administrative remedies does not necessarily require the naming of individuals in a grievance.  In *Jones*, which coincidentally involved MDOC Policy Directive 03.02.130, the Court found that neither the PLRA nor the MDOC required prisoners to name each defendant they later sued in their initial grievances in order to properly exhaust their administrative remedies.  549 U.S. at 217-18.  The Court reasoned that "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust'" and explained that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.* at 218.  Indeed, the version of MDOC Policy Directive 03.02.130 (effective Nov. 1, 2000) that was in place at the time the grievances at issue in *Jones* were filed made no mention of naming particular officials in grievances.  *See id.*  As Plaintiff points out, the Court concluded that

"exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id*. at 219.

The MDOC, however, has since revised Policy Directive 03.02.130, and it now requires that a grievance include "the <u>facts</u> involving the issue being grieved (i.e., who, what when, where, why, how)," and the "[d]ates, times, places, and names of all those involved in the issue being grieved."  MDOC P.D. 03.02.130(R) (eff. July 9, 2007) (emphasis in original). Additionally, this information must be defined at Step I of the grievance process. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, *supra*, ("[W]e understand [MDOC] policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process."). Also,  Accordingly, to properly exhaust his administrative remedies in accordance with MDOC policy, Plaintiff was required to file a Step I grievance (or grievances) against Defendants that included their names and detailed the facts and circumstances of their alleged misconduct, which grievances Plaintiff was further required to pursue through Step III of the grievance process.

As noted above, however, the only grievance related to Plaintiff's claims in this matter that he pursued through Step III of the grievance process is Grievance ARF-14-07-1939-02c, in which, contrary to Plaintiff's contention, Plaintiff named and grieved only Defendant Harpst, for failing to respond to his letter request for removal of the Prisoner Program and Work Assignment Evaluation Report from his record and for reinstatement as a law library clerk.  (Docket no. 43-3 at 25.)  And while Plaintiff did, as he contends, name Defendants Campbell, Bower, Harpst, Bates, McRoberts, Condon, and Smith in the Step III appeal of Grievance ARF-14-07-1939-02c, such is insufficient to constitute a proper exhaustion of administrative remedies against those

Defendants under MDOC policy.  Accordingly, Plaintiff has only exhausted his administrative remedies against Defendant Harpst, and summary judgment should be entered in favor of Defendants Campbell, McRoberts, Bower, Wayda-Slomski, Bates, Condon, and Doyle.[6]

As to Defendants King and Smith, Plaintiff's argument that he was not required to name them in a grievance because they are hearing officers whose actions are non-grievable under MDOC Policy Directive 03.02.130(F) holds merit.  (*See* docket no. 46 at 11.)  MDOC Policy Directive 03.02.130 sets forth an enumerated list of issues that are "non-grievable," which includes "[d]ecisions made in hearings conducted by hearing offices of the State Office of Administrative Hearings and Rules, including property disposition, and issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing)" and "[d]ecisions made in minor misconduct hearings, including property disposition."  MDOC P.D. 03.02.130(F).  Plaintiff's claims against Defendants King and Smith arise out of their actions in and related to Plaintiff's administrative hearings.  That is, Plaintiff claims that (1) Defendant King retaliated against him in violation of the First Amendment by ordering the destruction inmate Emerson's grievance;  and (2) Defendant Smith violated his First and Fourteenth Amendment rights by conspiring with Defendants McRoberts and Campbell by failing to allow prisoner affidavits as evidence at the misconduct hearing, by not allowing Plaintiff to be heard, by showing bias and prejudice against Plaintiff by finding him guilty when all evidence corroborated Plaintiff's version of events, and by exposing Plaintiff to collateral consequences.[7]  (Docket no. 1 ¶¶ 89, 90.)  Thus, Plaintiff's claims against Defendants King and

---

[6] For this reason, and in the interest of judicial economy, the Court does not reach Defendants' argument that Defendants Campbell, McRoberts, Bates, Condon, and Doyle should be dismissed for a lack of personal involvement in the activity that forms the basis of Plaintiff's Complaint.  (*See* docket no. 43 at 21-26.)

[7] Plaintiff does not define these "collateral consequences."

Smith are directly related to the hearing process, and they are non-grievable.[8]   Accordingly, Plaintiff was not required to utilize the grievance process to exhaust his administrative remedies for his non-grievable claims against Defendants King and Smith, and Defendants' Motion should be denied in this regard.

2.   *Plaintiff's Claims against Defendant Harpst*

Plaintiff claims that Defendant Harpst violated his First Amendment rights by conspiring with Defendants McRoberts, Campbell, and Condon "by classifying Plaintiff [as] a threat to the safety and security of the facility to keep Plaintiff from being placed back on assignment in retaliations [sic] for redress of legal grievance."   (Docket no. 1 ¶ 92.)   Prison officials may not retaliate against inmates who have engaged in constitutionally protected activities or conduct. *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999).   A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."   *Id.* (citations omitted).

a.   <u>Protected Conduct</u>

Filing a grievance or a complaint is constitutionally protected conduct under the First Amendment.   *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).   Plaintiff alleges that Defendant Harpst retaliated against him "for redress of legal grievance."   Plaintiff does not specifically define this quoted phrase in the Complaint; however, Plaintiff alleges that he filed the grievance against Defendant

---

[8] To the extent that any of Plaintiff's claims against Defendants King or Smith involve grievable issues, they were not properly exhausted, as discussed above.

13

Harpst on July 14, 2014, and on July 17, 2014 he received Defendant Harpst's denial of his request for the removal of the Prisoner Program and Work Assignment Evaluation Report from his record and his request for reinstatement as a law library clerk. (*Id.* ¶¶ 55-56.) Reading Plaintiff's *pro se* Complaint liberally, it appears that Plaintiff alleges that Defendant Harpst retaliated against him because he filed a grievance against Defendant Harpst. Therefore, for purposes of this Report and Recommendation, the undersigned will presume that Plaintiff was engaged in protected conduct.

<b>b.   <u>Adverse Action</u></b>

An action "capable of deterring a person of ordinary firmness from exercising the constitutional right in question" is an adverse action. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citation, internal quotation marks, and emphasis omitted). "[W]hile certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Thaddeus-X*, 175 F.3d at 398. "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (citations omitted). A plaintiff need not show "actual deterrence;" "[e]ven the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill*, 630 F.3d at 472.

Defendants construe Plaintiff's claim against Defendant Harpst as a due process claim and argue that it fails because Plaintiff did not have a constitutional right to his job as a law library clerk. (Docket no. 43 at 17-20.) Indeed, it is well settled that "no prisoner has a constitutional right to a particular job or to any job." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th

14

Cir. 1987); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) ("[T]he Constitution does not

create a property or liberty interest in prison employment.") But Defendants' focus on the non-

existent constitutional right to prison employment is misplaced, as Plaintiff does not assert a due

process claim against Defendant Harpst; he asserts a First Amendment claim of retaliation.

Thus, the true right at issue is Plaintiff's constitutional right to be free from retaliation for

exercising his First Amendment right to file grievances. *See Hill*, 630 F.3d at 473. In *Hill,* the

Sixth Circuit explained, albeit in the context of prison transfers, that "[e]ven though a prisoner

has no inherent constitutional right to avoid segregated housing or prison transfers, the BOP may

not place the prisoner in segregated housing or transfer him to another prison as a means of

retaliating against him for exercising his First Amendment rights." *Id*. Logically, then, the fact

that a prisoner has no constitutional right to prison employment or a particular job does not

necessarily mean that prison officials can decline to reinstate a prisoner to his previous job

assignment as a means of retaliating against him for filing grievances. Defendants' Motion for

Summary Judgment should therefore be denied with regard to Defendant Harpst.

The proper inquiry in this matter is whether the possibility of not being reinstated to a

particular prison job assignment is capable of deterring a person of ordinary firmness from

exercising his First Amendment right to file grievances. The Sixth Circuit "has indicated that

loss of a prison job can constitute an adverse action for retaliation purposes." *Walton v. Gray*,

695 F. App'x 144, 146 (6th Cir. 2017) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir.

2005); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999); *Newsom*, 888 F.2d at 375-77).

Pertinently, in *Newsom*, the Sixth Circuit found that under existing case precedent, "a failure to

reappoint an individual to a position is . . . impermissible, even where there was no cognizable

expectation of continued service, if reappointment was denied because of the individual's

exercise of First Amendment rights."   888 F.2d at 376.   Accordingly, under this precedent, Defendant Harpst's alleged failure to reinstate Plaintiff to his law library clerk assignment could constitute an adverse action.   This precedent also demonstrates that Plaintiff's right to be free from retaliatory interference with his prison employment for exercising his First Amendment rights was clearly established at the time of Defendant Harpst's allegedly unconstitutional actions in this matter, and it therefore precludes a grant of qualified immunity to Defendant Harpst.

c.   Motivating Factor

"This element addresses whether [a defendant's] subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct." *Hill*, 630 F.3d at 475 (citation omitted).   Evidence of retaliatory motive can include "the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action." *Id*. at 475-76 (citation omitted). Here, Plaintiff alleges that Defendant Harpst denied his letter request for reinstatement three days after Plaintiff filed the grievance against Defendant Harpst.   (*See* docket no. 1 ¶¶ 55-56.)   This temporal proximity pleaded by Plaintiff sufficiently demonstrates a causal connection between his protected conduct and Defendant Harpst's allegedly adverse actions.

Plaintiff's allegations against Defendant Harpst are therefore sufficient to support a claim of retaliation.   "If the prisoner can show that the [defendant's] adverse action was at least partially motivated by the prisoner's protected conduct, then the burden shifts to the [defendant] to show that [he] would have taken the same action even absent such protected conduct." *Hill*, at 475.   Defendants do not address this issue in their Motion for Summary Judgment, but Defendant Harpst did state in a sworn affidavit attached to Defendants' Motion that "[a]fter considering all

relevant circumstances, I felt there was a risk to the safety of Library staff and declined to return prisoner Boussum to a Law Library assignment."  (Docket no. 43-4 ¶ 8.)  Nevertheless, without further explanation, Defendant Harpst's statement does not adequately meet his burden.  And Plaintiff's Motion for Summary Judgment does not show that there is no genuine dispute as to any material fact in this regard.  Specifically, Plaintiff has not met his burden of showing an absence of evidence to support Defendant Harpst's defense.  *See Covington*, 205 F.3d at 915.  Plaintiff's Motion for Summary Judgment against Defendant Harpst should therefore be denied.  Accordingly, this matter should proceed on Plaintiff's claims against Defendant Harpst.

### 3.    *Plaintiff's Claims against Defendant King*

Plaintiff claims that Defendant King violated his First Amendment rights by retaliating against him by ordering the destruction of a legal grievance.  (Docket no. 1 ¶ 89.)  According to Plaintiff, Defendant King held a hearing on May 29, 2014 regarding Defendant Doyle's confiscation of inmate Emerson's grievance from Plaintiff.  (*Id*. ¶ 34.)  Plaintiff asserts that Defendant King told him that if a prisoner has another prisoner's grievance, it becomes contraband and will be destroyed.  (*Id*.)  Plaintiff, however, has failed to offer any evidence to support his allegation that Defendant King's destruction of the grievance was linked to any protected First Amendment activity by Plaintiff or that it was motivated by a desire to retaliate against Plaintiff.  "Conclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial."  *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (citations and internal quotation marks omitted).

Moreover, Plaintiff has failed to (and cannot) demonstrate that Defendant King took an adverse action against him on these facts.  While the confiscation of legal materials may constitute sufficient injury to satisfy the adverse-action requirement of a First Amendment

retaliation claim, such is not the case where the property confiscated is considered contraband under prison regulations.  *See Baker v. Mackie,* No. 2:10-cv-285, 2010 WL 5087278, at *5 (W.D. Mich. Dec. 7, 2010) (citing *Bell*, 308 F.3d at 604).  MDOC Policy Directive 04.07.112 (eff. 12/12/2013) regarding prisoner personal property provides that prisoners are not permitted to possess legal property or materials belonging to another prisoner.[9]  MDOC P.D. 04.07.112(N). It further provides that any personal property not specifically authorized by the policy is contraband and will either be returned to its rightful owner or destroyed.   MDOC P.D. 04.07.112(CC), (JJ).  Accordingly, under MDOC policy, the legal grievance belonging to inmate Emerson was contraband because Plaintiff did not have a right to possess it.  *See Hull v. Baker*, No. 1:11-cv-623, 2013 WL 1818615, at *7 (W.D. Mich. Mar. 27, 2013), *report and recommendation adopted in relevant part, rejected on other grounds*, No. 1:11-cv-623, 2013 WL 1818612 (W.D. Mich. Apr. 29, 2013), *aff'd* (Mar. 28, 2014) (holding that "[p]risoners have no right to possess contraband," and that no person of ordinary firmness would be deterred by the confiscation of contraband).

Furthermore, Defendant King ordered the destruction of the grievance in accordance with MDOC Policy Directive 04.07.112.   "An allegation that the imposition of the appropriate disciplinary sanction for an admitted rule violation constitutes retaliation is frivolous.  *Hudson v. Johnson*, 619 F. Supp. 1539, 1545 (E.D. Mich. 1985).  For these reasons, Plaintiff's Motion for Summary Judgment on his retaliation claim against Defendant King should be denied, and the claim should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).[10]

---

[9] "The MDOC's policy directives are a proper subject of judicial notice under Fed.R.Evid. 201(b)."  *Vartinelli v. Pramstaller*, No. 10-10702, 2010 WL 5330487, at *4 n.4 (E.D. Mich. Dec. 1, 2010), *objections overruled,* No. 10-10702, 2010 WL 5330484 (E.D. Mich. Dec. 21, 2010) (citing *Toth v. Grand Trunk R.R.,* 306 F.3d 335, 349 (6th Cir. 2002)).

[10] Pursuant to 28 U.S.C. § 1915, a district court has a duty to *sua sponte* dismiss at any time a case in which the plaintiff is proceeding *in forma pauperis* if it determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B).

4.     *Plaintiff's Claims against Defendant Smith*

Plaintiff's claims against Defendant Smith arise from the May 29, 2014 Class II misconduct charge issued against Plaintiff for insolence.  (Docket no. 1 at 49; docket no. 44-1 at 6-7.)  At the misconduct hearing, Defendant Smith found Plaintiff guilty of this charge and sentenced Plaintiff to five days loss of privileges.  (Docket no. 44-1 at 6-7.)  Plaintiff alleges First Amendment retaliation and Fourteenth Amendment due process claims against Defendant Smith for failing to allow prisoner affidavits as evidence at the misconduct hearing, for not allowing Plaintiff to be heard, for finding Plaintiff guilty, and for exposing Plaintiff to collateral consequences.  (Docket no. 1 ¶ 90.)  Defendants argue that summary judgment on Plaintiff's retaliation claim is appropriate because loss of privileges is not an adverse action that would deter a person of ordinary firmness from engaging in protected activity.  (Docket no. 43 at 29.)  Indeed, in *Ingram v. Jewell*, 94 F. App'x 271 (6th Cir. 2004), the Sixth Circuit found that fourteen days of lost privileges does not constitute an adverse action for purposes of a retaliation claim.  *Id*. at 273.  Defendants are therefore correct; Plaintiff's retaliation claim against Defendant Smith fails.

Defendants do not address Plaintiff's due process claim against Defendant Smith in their Motion for Summary Judgment.  The Due Process Clause states in pertinent part that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.  Those who seek to invoke the procedural protection of the Due Process Clause must establish that a life, liberty, or property interest is at stake.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  An inmate is deprived of a liberty interest under the Due Process Clause when the deprivation extends the duration of his sentence or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*,

515 U.S. 472, 484 (1995). But "[t]he Sixth Circuit has found that loss of privileges does not present an 'atypical and significant' hardship implicating a protected liberty interest. *Massey v. Pemberton*, No. 2:13-CV-14222, 2014 WL 495429, at *2 (E.D. Mich. Feb. 6, 2014) (O'Meara, J.) (citing *Wolff v. McDonnell,* 418 U.S. 539, 571 n.19 (1974 ) ("We do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges.")). Accordingly, Plaintiff cannot prevail on a retaliation claim or a due process claim against Defendant Smith for his actions at the misconduct hearing based on the sanction of five days loss of privileges. Plaintiff's Motion for Summary Judgment on his claims against Defendant Smith should therefore be denied, Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim against Defendant Smith should be granted, and Plaintiff's due process claim against Defendant Smith should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### D. Conclusion

For the reasons stated herein, it is recommended that the court (1) **DENY** Plaintiff's Motion for Summary Judgment (docket no. 42); (2) **GRANT** Defendants' Motion for Summary Judgment (docket no. 43) with regard to Defendants Campbell, McRoberts, Bower, Wayda-Slomski, Bates, Condon, and Doyle as well as Plaintiff's retaliation claim against Defendant Smith, and **DENY** Defendants' Motion with regard to Defendants Harpst and King; (3) **DISMISS** Plaintiff's claims against Defendant King and Plaintiff's due process claim against Defendant Smith pursuant 28 U.S.C. § 1915(e)(2)(B); and (4) **PROCEED** on Plaintiff's claims against Defendant Harpst only.

## III.     NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  June 26, 2018                     s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  June 26, 2018              <u>s/ Leanne Hosking</u>
                                   Case Manager